UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RUSSELL DYKEMA,

     Plaintiff,

       v.                                                                          No. 3:17-cv-829(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

     Defendant.
_____X


**RULING ON PENDING MOTIONS**

Plaintiff brings this action pursuant to section 205(g) of the Social Security Act, 42

U.S.C. § 405(g), seeking this court's review of a final determination of the Commissioner of

Social Security (the Commissioner) denying his request for a waiver of recovery of overpayment

of Title II disability insurance benefits (DBI) and Title XVI social security income benefits

(SSI).  Now before the Court are Plaintiff's Motion for an Order Revering the Decision of the

Commissioner [Doc. # 16], and the Commissioner's Motion for an Order Affirming the Decision

of the Commissioner [Doc. # 17].  For the reasons that follow, that Court grants Plaintiff's

motion and remands this case to the Commissioner for further proceedings consistent with this

opinion.

**Legal Standard**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security]

pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an

appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981).  The court must first

ascertain whether the Commissioner applied the correct legal principles in reaching her

conclusion, and then whether the decision is supported by substantial evidence. *Johnson v.*

*Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the

Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*,

675 F.2d 464, 467 (2d Cir. 1982). If the Commissioner's decision is supported by substantial

evidence, the decision will be sustained, even where there may also be substantial evidence to

support the contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). Substantial

evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch

of proof here and there in the record." *Id.* at 258.

## BACKGROUND

Plaintiff was found disabled due to mental impairments and began receiving benefits in

March 1995, when he was 33 years old. He currently continues to receive benefits. Throughout

this time, Plaintiff worked intermittently, earning different amounts of wages (or no wages) over

the years. The Commissioner has, at various times, stopped and then restarted Plaintiff's

benefits, and/or has adjusted them based on his income level. In 2006, Plaintiff was notified that

he had been overpaid benefits in the amount of $13,971.00, which was to be repaid by

withholding $25 per month from subsequent benefit payments.

Beginning in 2008, Plaintiff obtained a case manager through Southeastern Mental

Health Authority[1]. This case manager helped him with everyday functioning, including helping

---

[1] Southeastern Mental Health Authority is a community mental health agency operated by the
State of Connecticut Department of Mental Health and Addiction Services. *See*
http://www.ct.gov/dmhas/cwp/view.asp?a=2917&q=335372.

him to obtain assistance in handling financial matters. On July 3, 2009, the Social Security Administration (SSA) notified Plaintiff that Sound Community Services had been appointed as Plaintiff's representative payee because he needed help with managing his finances and meeting his needs. (R. 82). This notice informed Plaintiff that Sound Community Services would manage his finances, including reporting changes that impact benefits, and would document how his benefits were used. (R. 82). The notice also stated that enclosed was a pamphlet entitled "What you should know when a representative payee manages your money," but this pamphlet does not appear in the record following the notice.

In October 2012, the Commissioner notified Sound Community Services that Plaintiff had been overpaid benefits, mainly due to his wage levels from March 2003 through September 2012, in the amount of $19,406.70. Plaintiff requested a waiver of the overpayment, which was denied. Plaintiff then requested a hearing. On October 15, 2104, Plaintiff and his case manager testified at a hearing before administrative law judge Donald Thomas (the ALJ).

Plaintiff, who was 52 years old at the time of the hearing, resided with his girlfriend. (R. 28). He testified that he dressed and bathed himself, drove, did yard work and vacuuming, and cooked simple meals at home. (R. 45-46). He did not grocery shop or do laundry. (R. 46-47). A nurse comes to his home to administer medication. (R. 45). Plaintiff testified that he used a computer "a little bit" to play a flight simulator game and to go on Facebook. (R. 47-48). He went surfing once in the past two years. (R. 47-48). Plaintiff stated that he take taken flying lessons when he was younger, but had not been in a plane in four years. (R. 49).

Plaintiff had not worked for two years prior to the hearing. (R. 29). He lost his last job because he was not performing adequately due to his schizoaffective and bipolar disorders. (R. 30). Plaintiff was hospitalized from April 2014 through June 2014 when he stopped taking his

psychiatric medications; this was part of a pattern of psychiatric hospitalizations throughout his life. (R. 50-51). Plaintiff testified that his mother, girlfriend, or case manager help him with paperwork, including completing his applications for benefits, because his concentration and reading comprehension prevented him from doing so himself. (R. 43). He did not know when or how he was granted benefits, and testified that he thought he reapplied annually. (R. 39-40). He testified that he did not know that he had worked "over the limit," and that he reported all of his work activities to his case manager at Southeastern Mental Health Authority, Patricia Ring. (R. 39, 51). He expected that his case manager would tell him to "slow down" his work if it was a problem. (R. 39, 51).

Patricia Ring, LCSW, testified that she served as Plaintiff's case manager from 2008 through March 2014. (R. 32-33). The role of the case manager is to assist individuals with chronic mental illness with housing, finances, and general everyday functioning. (R. 33). If a client needs help with finances, the case manager would arrange for Sound Community Services to serve as a payee; the case manager served as a liaison between Sound Community Services and the client. (R. 33). Ms. Ring testified that she helped Plaintiff create a monthly budget, and then sent the budget to Sound Community Services so that it could pay Plaintiff's bills. (R. 33-34). This monthly budget included income from Plaintiff's wages. (R.35). Ms. Ring stated that she would report income information to the representative payee, and that she did not give clients a reason to think they had to do anything more. (R. 36). She testified that she was not trained on the reporting requirements of representative payees or benefit recipients, and that she thought a disability benefit recipient was not precluded from working (R. 35, 37).

The ALJ issued a decision on December 19, 2014, declining to waive recovery of the overpayment, and finding Plaintiff liable for repayment of $19,406.70. The ALJ concluded

Plaintiff was "at fault" in causing the overpayment because he knew or should have known that repeated changes in his work status and earned income could trigger changes in his benefits, and he relied on his communications to his case manager and representative payee and took no steps himself to inform the Commissioner of changes in his wages. (R. 19). The ALJ determined Plaintiff "has demonstrated significant reading skills, education level, cognitive capabilities, and work skills" that indicate he was capable of informing the Commissioner of changes to his wage level. (R. 22). In support of this conclusion, the ALJ reasoned that the case involved several years of applications, reporting forms, and recoupment of several overpayments, so Plaintiff had been introduced to the concept that he was obligated to provide the Commissioner with current information about his work activities and wages. (R. 22). The ALJ noted that Plaintiff attended college classes for about two years. (R. 22). The ALJ also found that Plaintiff's weekly and yearly activities show his capability to inform the Commissioner of the changes. These activities included making "easy meals," driving, using a computer, playing a video game, and going on a vacation in 2013. (R. 23).

The parties filed a Joint Statement of Material Facts [Doc. # 16-2]. The Court adopts this joint statement, and incorporates it by reference herein.

## Discussion

The Social Security Act contains procedures for when the Commissioner has over or under paid a claimant. "Whenever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner of

Social Security…" 42 U.S.C § 404(a)(1)[2]. While the Commissioner is directed to recover

overpayments, such recovery is not permitted from a claimant "who is without fault if such

adjustment or recovery would defeat the purpose of this subchapter or would be against equity

and good conscience." 42 U.S.C. § 404(b)(1). *See also* 20 C.F.R. § 404.506 (explaining the

process for requesting a waiver of recovery of an overpayment). Fault applies only to the

claimant. *See* 20 C.F.R. § 404.507 ("Although the Administration may have been at fault in

making the overpayment, that fact does not relieve the overpaid individual or any other

individual from whom the Administration seeks to recover the overpayment from liability for

repayment if such individual is not without fault."). A determination of whether a claimant is "at

fault" requires the Commissioner to consider "all pertinent circumstances, including the

individual's age and intelligence, and any physical, mental, educational, or linguistic limitations

(including any lack of facility with the English language) the individual has." *Id.* The fault

determination "does not require any showing of dishonesty or bad faith; rather, an honest

mistake may be sufficient to constitute fault." *Brown v. Berryhill*, No. 15-cv-8201(VSB)(BCM),

2017 WL 2493275, at *8 (S.D.N.Y. Mar. 3, 2017) (internal quotation marks and citation

omitted). The regulations direct the Commissioner to consider whether the overpayment resulted

from "an incorrect statement" made by the claimant, a claimant's "failure to furnish" material

information, or an "acceptance of a payment which [the claimant] either knew or could have

been expected to know was incorrect." 20 C.F.R. § 404.507.

---

[2] The Court cites to the provisions of the Act and regulations for Title II overpayments because
the largest portion of the overpayment came from those benefits. The legal framework,
including the definition of "fault," is generally the same for both Title II and Title XVI for
purposes of the issues here.

Recovery would defeat the purpose of the Act if it would result in "depriv[ing] a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508.

Recovery is against equity and good conscience if, as relevant here, the claimant changed his position for the worse because of "reliance upon a notice that a payment would be made or because of the overpayment itself." 20 C.F.R. § 404.509.

"The claimant bears the burden of demonstrating *both* that he is 'without fault' *and* that recovery would either defeat the purpose of Title II or 'be against equity and good conscience.'" *Brown* at *7 (emphasis in original). "If the Commissioner's finding that the claimant was not at fault is supported by substantial evidence, there is no need to consider whether recovery of the overpayments would defeat the purpose of Title II or would be against equity and good conscience." *Daviau v. Astrue*, No. 09-cv-870(MAD), 2012 WL 13543, at *3 (N.D.N.Y. Jan. 4, 2012).

In addition, an individual is without fault if he relies on erroneous information from "an official source within the Social Security Administration (or other governmental agency which the individual had reasonable cause to believe was connected with the administration of benefits under title II of the Act) with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto." 20 C.F.R. §§ 404.510(b); 404.510a.

In this case, Plaintiff argues that the ALJ erred by not considering 20 C.F.R. § 404.510(b). The Commissioner responds that the provisions of 20 C.F.R. §§ 404.510(b) and 404.510a are not applicable here. The Court finds that the ALJ erred in failing to specifically consider the applicability of 20 C.F.R. §§ 404.510(b) and 404.510a in the present case.

Pursuant to 20 C.F.R. §§ 404.510(b) and 404.510a, Plaintiff would be without fault if he accepted the overpayments because of reliance on erroneous information from an official source

he had reasonable cause to believe was connected with the administration of benefits with respect to the interpretation of a pertinent provision of the Social Security Act. This criteria may well be established here. The record shows that Plaintiff relied on assurances from his case manager that the representative payee would report changes that may impact his benefits, when it in fact did not. In addition, the case worker never told Plaintiff his wages were too high or that he worked too much such that he was ineligible for benefits. It was reasonable for Plaintiff to believe that the representative payee, and his case worker who acted as liaison, were connected with the administration of his benefits: he provided all relevant information to these officials, and received his benefit payments from them. In fact, the entire purpose of working with these officials is that Plaintiff, because of his disability, was unable to handle his own finances, including the benefit process. And finally, the erroneous information relied upon was regarding an interpretation of a pertinent provision of the Act: the guidelines for reporting work and income information to SSA, which encompasses several statutory requirements. Thus, the matter must be remanded so that the ALJ can address all applicable regulations.

In addition, the ALJ's finding of fault was not supported by substantial evidence. The ALJ discussed the "pertinent circumstances" used to evaluate fault, concluding that Plaintiff "demonstrated significant reading skills, education level, cognitive abilities and work skills." (R. 22). This determination is not supported by the record. It is not clear how the ALJ determined Plaintiff has significant reading skills or cognitive abilities, since the ALJ provided no reliable support for these conclusions. The fact that Plaintiff took a few college classes (likely decades ago), went on one recent vacation, and uses a computer sometimes simply does not lend support for the conclusion Plaintiff – who is disabled due to mental impairments – has significant reading

8

skills, education, and cognitive abilities. Likewise, the ALJ fails to explain what in the record supports his conclusion that Plaintiff's work skills are significant.

The Commissioner reasonably argues that the notice of overpayment at issue here was not Plaintiff's first experience with the requirement that he must update the SSA as to his work activity and earnings. The Court cannot, however, say that substantial evidence supports a conclusion that Plaintiff should have known that his ongoing reporting obligations were not satisfied under these circumstances. Plaintiff, who is disabled due to mental impairments, relied on the representations of his case manager that she would report income information to the representative payee, and that he did not need to do anything more. The Court cannot conclude that Plaintiff's reliance on this information was insufficient such that he should have known his ongoing reporting obligations were unmet.

For the reasons set forth above, this matter is remanded to the Commissioner for additional proceedings. Upon remand, the ALJ shall consider whether Plaintiff is without fault under all relevant regulations. If the ALJ concludes Plaintiff is without fault, he should, if necessary, continue with the analysis for waiver of overpayment recovery[3]. Since some of the overpayment occurred before Plaintiff had a case manager and was appointed a representative payee, the ALJ may also need to determine what portion of recovery (if any) should be waived.

---

[3] If the ALJ finds the standard of 20 C.F.R. §§ 404.510 (b) and 404.510a is met, "adjustment or recovery will be waived since it will be deemed such adjustment or recovery is against equity and good conscience." 20 C.F.R. § 404.512. In other words, "this avenue for relief circumvents a separate and subsequent analysis of the Title II or equity and good conscience factors … and instead grants a claimant waiver of recovery automatically if the claimant is without fault, as specifically defined." *Tefere v. Colvin*, 61 F.Supp.3d 207, 212 (D. Mass. 2014) (internal quotations marks omitted). If, on the other hand, the ALJ revisits and reverses his fault finding under 20 C.F.R. § 404.506(a), the ALJ must go on to analyze whether recovery would defeat the purpose of Title II or be against equity and good conscience.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals from this judgment can be made directly to the appropriate United States Court of Appeals.  *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED, this  24th  day of July, 2018, at Bridgeport, Connecticut.

       */s/ William I. Garfinkel*
       WILLIAM I. GARFINKEL
       United States Magistrate Judge